| |
|---|
| **UNITED STATES BANKRUPTCY FOR THE DISTRICT OF NEW JERSEY** |
| *Caption in Compliance with D.N.J. LBR 9004-1(b)*<br>Edmond M. George, Esquire<br>Michael D. Vagnoni, Esquire (*pro hac vice*)<br>OBERMAYER REBMANN MAXWELL & HIPPEL LLP<br>1120 Route 73, Suite 420<br>Mount Laurel, NJ  08054-5108<br>(856) 795-3300<br>*Attorneys for Plaintiff, High Brass Farm Land Holdings LLC* |

| | |
|---|---|
| In re:<br><br>HIGH BRASS FARM LAND HOLDINGS LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 19-25217 (MBK)<br>Honorable Michael B. Kaplan |
| HIGH BRASS FARM LAND HOLDINGS LLC,<br><br>PLAINTIFF,<br><br>v.<br><br>BANK OF AMERICA,<br><br>DEFENDANT | <br><br><br>Adversary No. (MBK) |

## COMPLAINT

AND NOW, comes the plaintiff High Brass Farm Land Holdings LLC, by and through its counsel, Obermayer Rebmann Maxwell & Hippel LLP, and files this Complaint to determine the allowance and secured status of Bank of America's claim, and in support thereof avers as follows:

## PARTIES

1. Plaintiff High Brass Farm Land Holdings, LLC, is a New Jersey limited liability company with its principal place of business located a 68 Sky Manor Road, Pittstown, New Jersey 08867 (the "Debtor" or "High Brass Farm Land").

2. Defendant, Bank of America, is a Delaware Corporation with its principal place of business located at 100 N. Tryon Street, Charlotte, North Carolina 28255.

## JURISDICTION AND VENUE

3. This Court has jurisdiction of this adversary proceeding pursuant to, inter alia, 28 U.S.C. § 1334, Rules 4004(a), 4007 and 7001(6) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and 11 U.S.C. §§ 502, 506 and 105(a). This adversary proceeding is a core proceeding under 28 U.S.C. § 157.

4. Venue of this adversary proceeding in this judicial district is appropriate pursuant to 28 U.S.C. § 1409(a), as this proceeding arises in or is related to a case arising under Title 11, which is presently venued in this district.

## BACKGROUND FACTS

5. The Debtor owns commercial real property located at 68 Sky Manor Road, Pittstown, New Jersey 08867. This property is indexed on the tax map of Alexandria Township ("Alexandria Township Map") as Block 21, Lot 38, and is used as a horse farm (the "Property" or the "Farm"). A copy of the Alexandria Township Map is attached as Exhibit "A".

6. Sky Manor Airport Partners ("Sky Manor") owns commercial real property located at 48 Sky Manor Road, Pittstown, New Jersey 08867 (the "Airport"). The Airport is indexed on the Alexandria Township Map, attached as Exhibit "A", as Block 21, Lots 38.02 and 40.

7. Both the Farm and the Airport are part of a subdivision plan negotiated throughout the late 1990's and finally approved by the Alexandria Township Planning Board in 2002.

4842-4904-9770

8. At the time the subdivision was proposed, Mr. Leland Kent Linn ("Mr. Linn") owned a single 94-acre tract of land that would later be subdivided into lots that became the Airport, the Farm, and a neighboring residential development (the "Airpark").

9. As part of the subdivision proposal, Mr. Linn sought and received approval to subdivide his property into three distinct lots which became the Airport, the Farm, and the Airpark.

10. The Airpark was designed to have 19 separate residential lots with airplane hangars for each house to permit the private planes to taxi directly to the Airport that bordered the development. This development also borders the Farm.

11. In order to facilitate the design for the Airpark, the Airport needed to extend its runway to connect to the Airpark. As part of the subdivision plan, the Airport extended its runway over what was at that time the Farm's driveway, which is shown on the Alexandria Township Map attached as Exhibit "A".

12. By extending the Airport's runway and removing the Farm's driveway, the Farm had no legal ingress or egress to a public road and became completely landlocked.

13. In exchange for the runway extension, which precluded the Farm from utilizing its original driveway to Sky Manor Road, Mr. Linn intended to grant the Farm access to Sky Manor Road via a driveway that exited through the Airport out to a shared portion of the Airport's driveway (hereinafter "New Driveway").

14. Due to the design of the subdivision, and the neighboring properties (including the Airport) the Farm was landlocked as a result of the loss of access to Sky Manor Road via the original driveway.

15. In 2005, Mr. Linn transferred the Farm to High Brass Farm LLC ("High Brass Farm"), the operating affiliate of the Debtor, by deed ("the Deed"), a true and correct copy of which is attached as Exhibit "B."

16. The Deed to the Farm particularly describes the transferred parcel by a surveyor's description attached to the Deed as Schedule A ("the Survey Description") which does not mention any easements or include any frontage on public roads.

17. High Brass Farm transferred the Farm by quitclaim deed to the Debtor in 2008. The Debtor is the current owner of the Farm.

18. High Brass Farm has operated its equestrian farm at its present location, at 68 Sky Manor Road, continuously since 2000.

19. High Brass Farm is a full-service horse boarding, training and show facility that also offers services for injured horses through the Equine Rehabilitation facility located on the Farm.

20. There are currently six structures located on the Farm: three houses, two stables, and a garage.

21. Amelia Way and Cirrus Lane, mentioned in the Survey Description, are private roads maintained by the Airpark and the Debtor has no legal right to use them. As a result, no road or path connects any structure on the Farm to Amelia Way or Cirrus Lane.

## DISPUTE

22. Starting in 2015, Sky Manor began demanding that the Debtor and High Brass Farm refrain from utilizing the New Driveway, and threatened to take action to block access to this driveway and thus, block all ingress and egress to the Debtor's Property, the Farm.

23. Extensive negotiations by counsel proved fruitless, and no settlement could be reached.

24. Sky Manor continues to claim that, because the Deed did not convey an express easement for the New Driveway, the Debtor and High Brass Farm have no legal right to use the only ingress and egress, via the New Driveway, available to and from the Farm.

25. The alleged absence of the easement has rendered the Debtor's title to the Farm unmarketable, and destroyed its value. Thus, the Debtor has been unable to obtain a long-term mortgage and is currently faced with a mortgage default and foreclosure due to the unmarketability of the title to the Farm.

26. In spite of the dispute and the impact on value, BOA has sought to foreclose on its matured Note.

27. Due to the pending foreclosure, and the inability to refinance the outstanding mortgage due to the ongoing easement dispute, the Debtor filed for Chapter 11 Bankruptcy on August 6, 2019.

## THE MORTGAGES

28. On April 21, 2008, the Debtor and High Brass Farm executed three promissory notes to Bank of America in the total amount of $1,570,000.00, secured by a mortgage on the Farm. These notes were not fully amortized, and had a maturity date with a balloon payment representing the majority of the balance, due in 2010.

29. Bank of America engaged a title insurance company to examine title to the Farm, which company engaged a title abstractor. The title abstract generated for the loans, attached as Exhibit C, particularly describes the Farm by repeating the Survey Description.

30. On July 19, 2010, the Debtor and High Brass Farm executed a note to Bank of America in the amount of $1,510,000.00 at 6.1% interest in order to pay off the 2008 loans from Bank of America ("the Note"). A true and correct copy of the Note is attached as Exhibit D.

31.     The Note was also secured by a duly-recorded mortgage on the Farm ("the Mortgage"), was not fully amortized, and had a maturity date of August 1, 2015.  A true and correct copy of the Mortgage is attached as Exhibit E.

32.     During the life of this loan, the Debtor paid down the principal balance by only $54,687.61.

33.     On April 5, 2016, the Debtor, High Brass Farm and Bank of America executed a modification of the previous loan ("the Modification"), setting the amount due back to $1,510,000.00.  The Modification also extended the maturity date to February 28, 2019 and set the interest rate at 5.25%.  A true and correct copy of the Modification is attached as exhibit F.

34.     The Modification includes a charge of $2,700.00 for appraisal costs.  Exhibit F, Recital B.

35.     Both the Debtor and Bank of America believed the Property had substantial value, with both apparently laboring under the same mistaken impression that title was marketable.

36.     The dispute with Sky Manor has rendered title to the Farm unmarketable, so the Debtor is currently unable to secure another mortgage of loan modification.  The mortgage is now matured.

37.     On August 21, 2019, Bank of America filed Proof of Claim 1 in the amount of $1,491,707.94 ("the Claim") as a claim fully secured by the Farm.

**COUNT I – OBJECTION TO PROOF OF CLAIM 1: RESCISSION BY MUTUAL OR UNILATERAL MISTAKE**

38.     The Debtor incorporates paragraphs 1 through 37 as if set forth at length.

4842-4904-9770

39. The Debtor engaged in the various lending transactions with Bank of America under the mistaken impression that the Deed had conveyed an express easement to the New Driveway, when it had not done so.

40. The Debtor would never have consummated the lending transactions if it had known the easement was not transferred in the Deed and title was unmarketable.

41. The Debtor exercised reasonable care in relying upon the representations of Mr. Linn that his Deed conveyed the New Driveway easement, and relying on Bank of America's apparent belief that the Farm would properly collateralize the loan.

42. Bank of America had extensive title searches performed in 2008, before extending a loan.

43. The Note states that the debt will be secured by real property, then repeats the Survey Description of the Farm which does not include any easements or frontage on public roads. Inherent in Bank of America's description of its collateral is a statement that the Farm cannot access any roads, and is thus landlocked and its title unmarketable.

44. Bank of America's failure to notice this fact from the Survey Description was unreasonable.

45. If Bank of America did not know the Farm was landlocked, Bank of America and the Debtor made a mutual mistake of fact regarding the most material feature of the contracts: the value of the collateral.

46. Enforcement of the Note, Mortgage and Modification contracts according to their terms would be unconscionable, and rescission is the only remedy that properly balances the equities of the case.

4842-4904-9770

47. If the note and mortgage are voided by rescission, Bank of America has no valid basis to make a claim against the Debtor, so the Claim must be disallowed as unenforceable against the Debtor or its property under 11 U.S.C.§502(b)(1).

WHEREFORE, The Debtor respectfully requests the following relief:

   a. That the Court order rescission of the Note, Mortgage and Modification,
   b. That the Court disallow the Claim,
   c. That the Court order Bank of America to file such documents as are necessary to clear the Mortgage off the title to the Farm, or in the alternative an issue order declaring the Mortgage on the Farm void, and
   d. For all such other relief as is proper and just.

### COUNT II – OBJECTION TO PROOF OF CLAIM 1: REFORMATION BY MUTUAL MISTAKE
**(Plead in the Alternative)**

48. The Debtor incorporates paragraphs 1 through 47 as if set forth at length.

49. If the equities of the case, or New Jersey law, do not permit rescission of the Mortgage, Note and Modification contracts, the Court may still reform the contracts.

50. Reformation aims to give effect to the intent of the parties.

51. Had the parties known the state of title to the Farm, the amount of the loan would have been, at most, the value of the Farm in 2016, given its unmarketable title.

52. The actual 2016 value of the Farm was far below the amount of the Modification and the current unpaid balance of the loan. In fact, unmarketable title generally makes a property unsaleable and worthless.

53. The contracts must be reformed to set the loan amount equal to the actual value of the Farm as it was in 2016.

54. To the extent that the Claim asserts a claim against the Debtor for more than the reformed amount, it is unenforceable against the Debtor or its property and must be disallowed.

4842-4904-9770

WHEREFORE, The Debtor respectfully requests the following relief:

a. That the Court determine the value of the Farm,
b. That the Court reform the Mortgage, Note and Modification to conform them with the determined value,
c. That the Court disallow the Claim to the extent that it exceeds the determined value,
d. That the Court order Bank of America to file such documents of record as are necessary to clarify that the Mortgage is so reformed, and
e. For all such other relief as is proper and just.

### COUNT III – VALUATION OF CREDITOR'S INTEREST AND DETERMINATION OF SECURED STATUS PURSUANT TO 11 U.S.C. §506(a)

55. The Debtor incorporates paragraphs 1 through 54 as if set forth at length.

56. An allowed claim against a bankruptcy debtor is secured "to the extent of the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. §506(a).

57. The Farm is landlocked and its title is unmarketable, so the Farm is worth a negligible amount, because it has no valuable, legal potential uses.

58. If any portion of Bank of America's claim is allowed, that claim must be bifurcated, with a determination that the secured portion is equal to the value of the Farm, as determined by the Court.

WHEREFORE, The Debtor respectfully requests the following relief:

f. That the Court determine the value of the Farm,
g. That the Court disallow the Claim as a secured claim to the extent that it exceeds the determined value, and
h. For all such other relief as is proper and just.

    Respectfully submitted,

Date: October 18, 2019    /s/ Edmond M. George
    Edmond M. George, Esquire
    Michael D. Vagnoni, Esquire (*pro hac vice*)
    OBERMAYER REBMANN MAXWELL & HIPPEL LLP
    1120 Route 73, Suite 420
    Mount Laurel, NJ  08054-5108
    *Attorneys for Plaintiff, High Brass Farm Land Holdings LLC*